UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION
_____

TONYA SHUGART                             CIVIL ACTION NO. 05-1418 -A

-vs-                                                    JUDGE DRELL

DITTO APPAREL OF
CALIFORNIA, INC.                          MAGISTRATE JUDGE KIRK

R U L I N G

Before the Court is Defendant Ditto Apparel of California's
(sometimes "Ditto") Motion for Summary Judgment filed on June 26, 2006.
(Doc. # 15).  Plaintiff, Tonya Shugart, opposes the motion.  (Doc. # 19).  The Court
finds there is no need for oral argument in this matter.  For the reasons set forth
herein, Defendant's Motion for Summary Judgment will be GRANTED in part and
DENIED in part.

BACKGROUND

In June of 2004, Ms. Shugart (sometimes "Plaintiff"), accepted a full-time
position as a factory worker in Ditto's Colfax, Louisiana factory for the second
time.[1]  (Doc. # 1).  During her second period of employment with Ditto,

_____

[1] Plaintiff previously worked for Ditto from June 28, 2003 to August 22, 2003.

Ms. Shugart claims that she was sexually harassed on a daily basis by one of her co-workers, John Michaels.[2]  According to her, each time she encountered Mr. Michaels at work, he directed sexually suggestive comments toward her.  For example, Mr. Michaels would ask her when she was "going to let him grab her ass," or would remark that they should go "around the back" or "in the bathroom" to have sex.  Plaintiff initially ignored his comments, but at a later point she became frustrated and asked him to cease.[3]

On January 19, 2005, while Plaintiff was exiting the break room to return to work following the lunch bell, Mr. Michaels walked in front of her and "reached back and grabbed [her] between the legs."  Plaintiff immediately left the break room and reported the incident to her supervisor, Ms. Sharon Molan.  In response to her complaint, Ms. Molan told Plaintiff that "she would take care of it."  She also instructed Plaintiff not to tell her boyfriend, a co-worker at the plant, about the incident.[4]  After being repeatedly questioned by her boyfriend, however, Plaintiff told him what had occurred.  Upon learning that Plaintiff had told him, Ms. Molan confronted Plaintiff and "started screaming and yelling" she "shouldn't have done that."

_____

[2]  Plaintiff's deposition testimony (Doc. # 15 exhibit 1) is the only source for facts in this case.

[3]  According to Plaintiff, she failed to report Mr. Michaels' comments to management at Ditto because she believed that "nothing would get done."

[4]  Plaintiff's boyfriend at that time was Tony Bartlett, a supervisor at Ditto.  Plaintiff believes that Ms. Molan instructed her not to tell her boyfriend about the incident because she was concerned that he would confront Mr. Michaels.

Within the hour, Ms. Molan called Ms. Shugart into her office for a meeting with management personnel.[5] During that meeting, Plaintiff was presented with a copy of a written incident chronicle prepared by management. This document proposed to describe the incident as had been described to Ms. Molan by Ms. Shugart. Plaintiff signed the statement and then returned to work.

Upon returning to work, Plaintiff noticed that the offender, Michaels, still remained in her work area; not wishing to be around him, Shugart decided to move from her work station to an adjacent work area still inside the plant. Shortly thereafter, Ms. Molan approached Plaintiff, telling her to return to her original work station. When Plaintiff refused, she was again called into Ms. Molan's office to meet with management personnel. This time, Shugart insisted that she would not return to her work station until Mr. Michaels was removed from the area. To accommodate Plaintiff, she was temporarily placed in the plant break room while management attempted to resolve the situation. Within an hour, Ms. Molan informed Plaintiff that she could return to her work station, as Mr. Michaels had been relocated.

Approximately forty minutes later, Plaintiff was, yet again, called to a meeting with management, this time, in the office of Dana Winston (Mr. Michaels'

---

[5] Present were Ms. Molan, Heath Tyler (Ms. Molan's Supervisor), and Mona Laffoon (Ditto's Human Resources Manager).

direct supervisor).[6] During that meeting, Plaintiff was presented with a document stating that her complaint had been investigated, and that, pursuant to Ditto's company policy, Mr. Michaels had only been issued a written warning for his conduct. Upon hearing this information, Plaintiff became upset and voiced her displeasure. Plaintiff told management present that "she [did] not give a damn about company policy," and that Mr. Michaels should have been fired. Frustrated with management's handling of the incident and believing Mr. Michaels' reprimand insufficient under the circumstances, Plaintiff exited the meeting and left the company premises. The next day, Plaintiff called to apologize for walking out of the meeting and leaving the factory; however, her apology was rejected and her employment with Ditto was terminated effective immediately.

On or about February 7, 2005, Plaintiff filed a Charge of Discrimination with the EEOC, alleging hostile work environment sexual harassment, and retaliation in violation of the Civil Rights Act of 1965, 42 U.S.C. § 2000e, *et seq.* (Title VII). (Doc. # 1). After completing the administrative remedy process, Plaintiff received a right-to-sue letter and subsequently filed suit on August 8, 2005. (Doc. # 1). Ditto filed the instant motion seeking to have all claims dismissed. (Doc. # 15).

---

[6] Present were Ms. Molan, Heath Tyler, Dana Winston and Mona Laffoon, all management personnel.

ANALYSIS

SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure mandates that a summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file . . . together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 249-50, 106 S. Ct. 2505, 2511 (1986). If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-23, 106 S. Ct. 2548, 2551-53 (1986)). In the analysis, all inferences are drawn in the light most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Brock v. Chevron U.S.A., Inc., 976 F.2d 969, 970 (5th Cir. 1992).

SEXUAL HARASSMENT

Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e)-2(a)(1). In this circuit, to establish a prima facie case of sexual discrimination a plaintiff must meet five elements. See Jones v. Flagship Int'l, 793 F.2d 714, 719-20 (5th Cir. 1986). Specifically, a plaintiff must show that: (1) she belongs to a protected class; (2) she was subjected to an unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action. Hockman v. Westward Communications, LLC, 734 WL 2980351 at 5 (5th Cir. 2004)(citing Jones, 793 F.2d at 719-20 (5th Cir. 1986)). In the present case, only elements four and five are in dispute. (Doc. # 15).

> Whether the harassment affected a term, condition, or privilege of Plaintiff's employment

To affect a term, condition, or privilege of employment the complained of conduct must be both objectively and subjectively abusive. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22, 114 S. Ct. 367, 370 (1993). This requires a plaintiff to prove the harassment was sufficiently severe or pervasive to alter the terms or conditions of her employment by creating a hostile work environment.

See <u>Meritor Savings Bank v. Vinson</u>, 477 U.S. 64, 67, 106 S. Ct. 2399, 2405 (1988); <u>see</u> <u>also</u> <u>Jones</u>, 793 F.2d at 719-20 (5th Cir. 1986). Mere rude or offensive comments, teasing, or isolated incidents are insufficient to rise to the level of a hostile work environment. <u>Hockman</u>, 2004 WL 2980351 at 5 (5th Cir. 2004). In determining whether a hostile work environment exists, a court must consider all of the circumstances surrounding the purported harassment, including: (1) the frequency of the harassment; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) and whether it reasonably interferes with an employees work performance. <u>Harris</u>, 510 U.S. at 23 (1993).

Here, Plaintiff's harassment was sufficiently severe and pervasive to meet this standard. Plaintiff introduced evidence that Mr. Michaels sexually assaulted her at work ("he reached back and grabbed me between the legs"). (Doc. # 15). Further, the record reveals that, on a daily basis, Mr. Michaels would direct inappropriate sexual comments toward Plaintiff, such as inquiring when she was "going to let him grab her ass," or remarking that they should "go around the back" or "in the bathroom" to have sex. (Doc. # 15). While standing alone these comments may not be severe or pervasive enough to create a "hostile work environment," Mr. Michaels' comments coupled with his sexual assault created an environment which was not only offensive to Plaintiff but would also be considered offensive to any reasonable person in similar circumstances. <u>See</u>

<u>Harris</u>, 510 U.S. at 21-22 (1993)(holding that the offensive conduct must be severe or pervasive enough to create both an objectively and subjectively hostile work environment). We find that, as a matter of law, the harassment complained of affected a term, condition, or privilege of Plaintiff's employment. Therefore, Plaintiff has met the fourth element toward establishing a prima facie case of sexual harassment.

Whether Ditto failed to take prompt remedial action

Once informed of Plaintiff's allegations of sexual harassment, Ditto had a duty to take prompt remedial action "reasonably calculated" to end the harassment. <u>See</u> <u>Waltman v. Int'l Paper Co.</u>, 875 F.2d 468, 479 (5th Cir.1989). What constitutes prompt remedial action must be determined on a case-by-case basis. In making such a determination, however, a court may consider the "severity and persistence of the harassment and the effectiveness of any initial remedial steps." Not all remedial action taken by the employer will be sufficient to discharge its duty; an employer can escape liability only if it can show that its actions were "reasonably calculated" to end the harassment. <u>Id</u>.

Based on the summary judgment evidence submitted, we find Plaintiff's argument that Ditto failed to take prompt remedial action unconvincing. Plaintiff contends that, in response to her sexual harassment complaint, Ditto only intended to issue Mr. Michaels a written warning, and that the decision to terminate Mr. Michaels occurred after it became evident that Plaintiff was

dissatisfied with the disciplinary action taken.  To support this contention, Plaintiff relies on the language contained within Mr. Michaels' warning itself, which states: "This issue is now resolved and all parties are requested to refrain from further conversation about this matter." (Doc. # 15 exhibit 5).  While Plaintiff is correct that, under these circumstances, a written warning, in and of itself, would not likely be considered prompt remedial action "reasonably calculated" to end Plaintiff's harassment, it is uncontroverted that the written warning issued to Mr. Michaels effectively resulted in his immediate termination.  (Doc. # 15 exhibit 1).

Under Ditto's company policy at the time of Plaintiff's employment, any employee receiving three written warnings within a year would be terminated.[7] (Doc. # 15 exhibit 1).  Because the written warning issued to Mr. Michaels on January 19, 2005 (the same day on which Plaintiff notified Ditto's management of her sexual assault) was his third warning that year, Mr. Michaels was immediately terminated.  (Doc. # 15).  While the record evidence is silent as to whether Ditto issued the written warning with that intent in mind, the fact remains that the written warning resulted in Mr. Michaels' immediate termination.  Based on the effectiveness of these remedial steps taken, Ditto's actions were sufficient to discharge its duty under Title VII.  That is, considering

---

[7] Although a copy of Ditto's Employee Handbook was not provided to the Court, in light of Plaintiff's deposition testimony, we will assume that such a policy existed.

the summary judgment evidence and in light of the timing of Mr. Michaels'
termination, we find that Ditto's actions were "reasonably calculated" to end
Plaintiff's harassment. Accordingly, Plaintiff has failed to meet the fifth element
toward establishing a prima facie case of sexual harassment, and therefore, her
Title VII claim for sexual harassment will be dismissed with prejudice.

RETALIATION

Plaintiff alleges that Ditto retaliated against her in violation of Title VII.
Title VII prohibits employers from retaliating against an employee because he or
she has "opposed any practice made an unlawful employment practice by Title
VII," or "made a charge, testified, assisted, or participated in any manner in an
investigation, proceeding, or hearing under Title VII." 42 U.S.C. § 2000e-3(a).
Retaliation claims are analyzed under the Mc Donnell Douglas burden-shifting
framework, which requires a plaintiff to establish a prima facie case of retaliation.
McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824-25
(1973). To satisfy this burden, a plaintiff must show: (1) that she engaged in an
activity protected by Title VII; (2) that an adverse employment action occurred,
and (3) that a causal link[8] existed between the protected activity and the adverse

---

[8] Ditto argues that, to satisfy the "causal" element, Plaintiff must show that "but for" her
report of sexual harassment she would not have been terminated. Following the Supreme Court's
ruling in Desert Palace, Inc. v. Costa, however, it remains unclear in the Fifth Circuit as to the
proper articulation of the standard of causation for retaliation claims. See Rachid v. Jack in the
Box, Inc., 376 F.3d 305 (5th Cir. 2004); Machinchink v. PB Power, Inc., 398 F.3d 345 (5th Cir. 2005);
compare Septimus v. University of Houston, 399 F.3d 601 (5th Cir. 2005); Bryant v. Compass Group
USA, Inc., 413 F.3d 471 (5th Cir. 2005). Because of this ongoing disagreement, we reject the "but
for" standard of causation, and choose to use the statutory language "because of" in determining

employment action.  <u>Long v. Eastfield College</u>, 88 F.3d 300, 304 (5th Cir. 1996).
"Once a plaintiff has established a prima facie case, the burden of production
shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason'
for the challenged employment action.'" <u>O' Neal v. Roadway Express</u>, 181 Fed.
Appx. 417, 420 (5th Cir. 2006) (<u>quoting</u> <u>McDonnell Douglas</u>, 411 U.S. at 802 (1973)).
If the defendant meets this test, the burden shifts to the plaintiff to show that the
articulated nondiscriminatory reason is pretextual.  <u>Barnes v. Yellow Freight
Systems, Inc.</u>, 778 F.2d 1096, 1099-1100 (5th Cir. 1985).  "[R]ejection of the
defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact
of intentional discrimination." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530
U.S. 133,134, 120 S.Ct. 2907, 2101 (2000).

Here, Plaintiff has established a prima facie case and provided sufficient
evidence for a reasonable fact-finder to reject Ditto's non-discriminatory
explanation for terminating Plaintiff's employment (*i.e.* that she was fired for
violating company policy).  While there is no direct evidence in the record that
Ditto terminated Plaintiff because of her sexual harassment complaint, there is
substantial circumstantial evidence to support such a finding.  For instance, Ditto
purports that Plaintiff was terminated either because she left work without
permission, or because she would have received her third warning in the same
year for leaving work without permission.  (Doc. # 15).  In light of the

---

whether Plaintiff has met the requisite causation standard.

circumstances surrounding her decision to leave work, however, adherence to either policy is outrageous. As discussed, Plaintiff was physically sexually assaulted on the very day that she left work. The particular event of an obscene, unwanted, sexual touching, at a minimum, would have disrupted anyone's state-of-mind for that day, and should have been taken into consideration by Ditto in deciding whether to reprimand her for leaving work without permission. Surely, Ditto's policies regarding work absence were not intended to cover Plaintiff's situation, nor should they be intended to be regimented with such reckless disregard to the facts surrounding a particular incident.

Nonetheless, even if we were to agree with Ditto, that Plaintiff's actions on the day in question were violative of company policy, we question Ditto's unwillingness to accept her apology, especially considering the trauma which she endured the previous day. Ditto's refusal to allow Plaintiff to return to work simply because of a technical violation of a company rule was unreasonable under the circumstances. Likewise, Ms. Molan's actions on the day in question (screaming and yelling at Plaintiff for informing her boyfriend of the assault) adds fuel to the evidentiary fire and casts doubt upon the legitimacy of Ditto's proffered non-discriminatory reasons for terminating Plaintiff.

In summary, Plaintiff's prima facie case, together with Ditto's unreasonable actions following Plaintiff's sexual assault complaint, create a genuine issue of material fact as to whether Plaintiff was terminated for a non-discriminatory

reason.  <u>See</u> <u>Reeves</u>, 530 U.S. at 135 (2000).  As such, Plaintiff's claim must survive summary judgment.

<u>CONCLUSION</u>

For the abovementioned reasons, as to Plaintiff's sexual harassment claim, summary judgment will be GRANTED and, with respect to Plaintiff's retaliation claim, summary judgment will be DENIED.

SIGNED on this 12th day of January, 2007, at Alexandria, Louisiana.

Dee D. Drell<br>
United States District Judge